# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JONATHON GADRA-LORD,** | : | **Civil No. 1:12-CV-2426** |
| | : | |
| **Plaintiff,** | : | **( Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **DAVID VARANO, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of The Case

This is a *pro se* civil rights case that was first brought by Jonathon Gadra-Lord, a state inmate, through the filing of a complaint on December 5, 2012. (Doc. 1.) The plaintiff's *pro se* complaint is a spare, terse document. (Id.) It names nineteen correctional defendants, ranging from the prison superintendent to various supervisors, majors, captains, lieutenants, and other correctional staff. (Id.) The complaint then contains one paragraph hand written narrative, which simply lists a series of legal claims, unadorned by any supporting facts, alleging that unidentified prison officials have improperly confiscated Gadra-Lord's property, including legal property; interfered with Gadra-Lord's access to courts by seizing unidentified legal materials; and retaliated against Gadra-Lord in ways that are not further described. (Id., Section IV.)

Nowhere in this pleading does Gadra-Lord identify who committed these alleged acts. Thus, Gadra-Lord's complaint does not allege any facts linking any of the named defendants to any of these alleged violations. Nor does Gadra-Lord state when these acts are alleged to have occurred. (Id.) Indeed, the only factual averment that is pleaded with any specificity in the complaint is Gadra-Lord's statement that he was provided with a grievance procedure to challenge this property confiscation, and fully exhausted his grievances regarding the seizure of this property. (Id., Section II.) Gadra-Lord then demands compensatory damages of $100,000 from the defendants jointly and severally. (Id.)

Along with his complaint, the plaintiff has sought leave to proceed *in forma pauperis*. While we will grant this motion for leave to proceed *in forma pauperis*, (Doc.2.), as part of our legally-mandated screening of *pro se*, *in forma pauperis* cases, we have carefully reviewed this complaint, and conclude that, in its current form, the complaint fails to state a claim upon which relief can be granted. Accordingly, for the reasons set forth below, it is recommended that the complaint be dismissed, without prejudice to the plaintiff endeavoring to file an amended complaint which addresses the deficiencies noted in this Report and Recommendation, provided that the plaintiff acts within 20 days of any dismissal order.

## II.     Discussion

### A.     Screening of *Pro Se In forma Pauperis* Complaints–Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials.   Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>  In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it must state who has harmed the plaintiff and allege when that harm occurred. Such basic averments are required both as a matter of principle, and by pragmatic considerations. First, as a matter of principle, compliance with these basic requirements in pleadings is essential because constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the

challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). It is, therefore, simply impossible to properly assign individual responsibility to particular defendants who are not identified in a complaint in some intelligible fashion and it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the constitution. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006)(dismissing illegible complaint).

**B.** **Gadra-Lord's Complaint Violates Rule 8 of the Federal Rules of Civil Procedure**

As a threshold matter these pleading principles compel dismissal of Gadra-Lord's current complaint. At the outset, as presently drafted the complaint violates the basic rule of pleading which requires that "a District Court . . . determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a

'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." <u>Fowler</u>, 578 F.3d at 210-11. In addition, dismissal of this complaint is also warranted because the complaint fails to comply with Rule 8's basic injunction that: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

Dismissal of this complaint is appropriate since it is well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." <u>Scibelli v. Lebanon County</u>, 219 F. App'x 221, 222 (3d Cir. 2007). Thus, when a complaint is "illegible or incomprehensible", <u>id.</u>, or when a complaint "is also largely unintelligible," <u>Stephanatos v. Cohen</u>, 236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate. <u>See, e.g.</u>, <u>Mincy v. Klem</u>, 303 F. App'x 106 (3d Cir. 2008); <u>Rhett v. New Jersey State Superior Court</u>, 260 F. App'x 513 (3d Cir. 2008); <u>Stephanatos v. Cohen</u>. <u>supra</u>; <u>Scibelli v. Lebanon County, supra;</u> <u>Bennett-Nelson v. La. Bd. of Regents</u>, 431 F.3d 448, 450 n.1 (5th Cir. 2005). Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of

action];" <u>Binsack v. Lackawanna County Prison</u>, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. <u>Tillio v. Spiess</u>, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011). Finally, a complaint may be dismissed under Rule 8 when the pleading is simply illegible and cannot be understood. <u>See, e.g.</u>, <u>Moss v. United States</u>, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); <u>Radin v. Jersey City Medical Center</u>, 375 F. App'x 205 (3d Cir. 2010); <u>Earnest v. Ling</u>, 140 F. App'x 431 (3d Cir. 2005) (dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); <u>Oneal v. U.S. Fed. Prob.</u>, CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); <u>Gearhart v. City of Philadelphia Police</u>, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) (dismissing illegible complaint).[1]

---

[1]In the first instance Rule 8 dismissals are often entered without prejudice to allowing the litigant the opportunity to amend and cure any defects. In such instances, the failure to timely submit a proper amended complaint that complies with the strictures of Rule 8 may then warrant the dismissal of the complaint with prejudice. <u>See, e.g.</u>, <u>Moss v. United States</u>, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); <u>Mincy v. Klem</u>, 303 F.App'x 106 (3d Cir. 2008); <u>Rhett v. New Jersey State Superior Court</u>, 260 F.App'x 513 (3d Cir. 2008); <u>Stephanatos v. Cohen</u>. supra;  <u>Scibelli v. Lebanon County, supra;</u>

In addition, in this case Gadra-Lord merely listed the defendants in the caption of the complaint, without setting forth any factual basis for a claim against them in the body of this pleading. Without the inclusion of some further well-pleaded factual allegations, the assertions made here simply fail to meet the threshold defined by law since they do not even rise to the level of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." <u>Ashcroft v. Iqbal</u>, <u>supra</u> 556 U.S. at 678. Indeed, this style of pleading, which merely lists parties as defendants without any supporting factual averments whatsoever, has been held to be plainly inadequate to state a civil rights claim against a government official. <u>See</u> <u>Hudson v. City of McKeesport</u>, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)

In sum, we find that this complaint fails to state who allegedly harmed the plaintiff, and when this harm is alleged to have occurred. Without further coherence and clarity on Gadra-Lord's part, the defendants simply could not reasonably be expected to respond to this indecipherable document and would be "left [to] . . . having to guess what of the many things discussed constituted [a cause of action]." <u>Binsack v. Lackawanna County Prison</u>, 438 F. App'x 158 (3d Cir. 2011). Therefore,

in these circumstances, Rule 8 calls for the dismissal of this complaint in its current form.

### C.    **Gadra-Lord's Claims Fail As a Matter of Law as Currently Pleaded**

Moreover, liberally construed, Gadra-Lord's complaint makes four core claims, alleging that the confiscation of his property: (1) violated the Fourth Amendment; (2) deprived him of property without due process; (3) unconstitutionally interfered with his right of access to the courts; and (4) constituted some form of unlawful retaliation.

As pleaded by the plaintiff, however, many of these claims are unavailing. At the outset, to the extent that the plaintiff is attempting to advance a Fourth Amendment claim in this prison setting, it is clear that this claim fails as a matter of law. While the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV, in order to give force to this guarantee, government officials are limited to conducting searches that are reasonable. Delaware v. Prouse, 440 U.S. 648, 653-54 (1979); Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 301 (3d Cir. 2010). As the Third Circuit has explained:

> Reasonableness under the Fourth Amendment is a flexible standard, Bodine v. Warwick, 72 F.3d 393, 398 (3d Cir. 1995), "not capable of precise definition or mechanical application, Bell [v. Wolfish, 441 U.S. 520, 559 (1979)]. "In each case it requires a balancing of the need for

the particular search against the invasion of personal rights that the search entails." Id.

Florence, 621 F.3d at 301.

In Hudson v. Palmer, 468 U.S. 517, 529 (1984), and Block v. Rutherford, 468 U.S. 576 (1984) the Supreme Court directly addressed this issue in a custodial setting and unequivocally foreclosed plaintiff's Fourth Amendment claims relating to the seizure of items from him. In Block and Hudson the Supreme Court flatly held that the seizure of items from a cell by prison officials does not violate the Fourth Amendment. As the United States Court of Appeals for the Third Circuit has explained:

> The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells. Hudson v. Palmer, 468 U.S. 517, 529, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration. Id. at 527. Mindful that internal security is a chief concern in prisons, the Court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells. Id. Therefore, "the Fourth Amendment has no applicability to a prison cell."

Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001).

Thus, it is beyond argument that the plaintiff did not enjoy a privacy right in his prison cell. For these reasons, plaintiff's Fourth Amendment constitutional claims lack any legal merit.

-13-

Moreover, inmate due process claims arising out of the confiscation of property are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs. See Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). [Therefore] "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-deprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial component to any inmate due process claim in this setting: (1) the confiscation of property; and (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy. In this case Gadra-Lord concedes that he had, and exercised, a post-deprivation remedy for the confiscation of this property and legal materials. The existence and exercise of these post-deprivation remedies fully satisfies the requirements of due process in this setting. Therefore, this claim also fails on its merits.

Gadra-Lord's prospects on this particular claim do not improve if it is cast as an access to courts claim since the plaintiff has not shown that he was denied access to the courts in a fashion which offends the Constitution. This complaint calls upon us to consider the contours of the constitutional right of access to the courts. Since

1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. <u>Id.</u> at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in <u>Lewis v. Carey</u>, 518 U.S. 343 (1996). In <u>Lewis</u>, the court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the court observed:

> Because <u>Bounds</u> did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is the touchstone," <u>id.</u>, at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although <u>Bounds</u> itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that

constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied . . . . Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. Id.,at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).

Thus, following Lewis, courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). A necessary corollary to this principle is that, in order to prevail on an access to the courts claim, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim." Christopher v. Harbury, 536 U.S. 403, 415 (2002). Thus:

Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"-that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. See Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it  is "more than mere hope," and it must describe the "lost remedy." See id. at 416-17, 122 S.Ct. 2179.

<u>Monroe v. Beard</u>, 536 F.3d 198, 205-06 (3d Cir. 2008)

These legal tenets control here, and are fatal to this access to the courts claim as it is currently pleaded for at least two reasons. First, to make such a claim the plaintiff "must describe the underlying arguable [legal] claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " <u>Monroe v. Beard</u>, 536 F.3d 198, 206 (3d Cir. 2008). Here, the complaint identifies no lost legal claims or remedies, essential prerequisites to a constitutional tort in this setting. Further, Gadra-Lord simply has not alleged actual concrete prejudice to him in the litigation of any particular case, the essential prerequisite to a constitutional claim in this field. Therefore, this claim fails on its merits.

Finally, with respect to Gadra-Lord's retaliation claim, a prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. <u>Carter v. McGrady</u>, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to

deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this third, and crucial, component to a constitutional retaliation claim, causation, an inmate must make an exacting showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Moreover, when examining these causation issues, we are specifically admonished that:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by

engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take. The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events. Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts. Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the

causation element. <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 512 (3d Cir.2003); <u>see also</u> <u>Kachmar v. Sungard Data Sys., Inc.</u>, 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." <u>Marasco</u>, 318 F.3d at 512 (quoting <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, <u>see</u> <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 189 (3d Cir.2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

<u>Conklin v. Warrington Tp.</u>, No. 06-2245, 2009 WL 1227950, *3 (M.D.Pa. April 30,2009).

Here, as we have noted, Gadra-Lord's current complaint contains no well-pleaded facts describing this alleged retaliation. Therefore, the plaintiff simply has not met his exacting burden of pleading such a claim by alleging facts which show "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007). Accordingly, this claim, as pleaded, is legally insufficient and should be dismissed.

## D.    The Plaintiff's Claim for a Specified Sum of Unliquidated Damages Should be Stricken

Further, we note that the Court should also strike the various claims for specific sums of unliquidated damages from this *pro se* complaint.  In this regard, Rule 12(f) of the Federal Rules of Civil Procedure imposes a duty on the Court to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P. 12(f).  Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance.  Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984).   In this case, the plaintiff's various claims for specified amounts of unliquidated damages violate Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.*  The short plain statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying particular amounts of unliquidated damages, these specific dollar claims should be stricken from the complaint without prejudice to the plaintiff arguing in any subsequent trial

or hearing on the merits for any appropriate amount of damages supported by the evidence.

While this screening merits analysis calls for dismissal of this action in its current form, we recommend that Gadra-Lord be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for leave to proceed *in forma pauperis* be GRANTED, but that the plaintiff's complaint be dismissed without prejudice to providing the plaintiff one

final opportunity to endeavor to correct the defects cited in this report, provided that

the plaintiff acts within 20 days of any dismiss.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 7th day of December 2012.


*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge