**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JONATHAN GADRA-LORD,** | : | **Civil No. 1:12-CV-2426** |
| | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **DAVID VARANO,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

## I.     INTRODUCTION

The plaintiff in this action is Jonathan Gadra-Lord, an inmate in the custody of the Pennsylvania Department of Corrections, presently housed at the State Correctional Institution at Mahanoy ("SCI-Mahanoy"). Gadra-Lord commenced this lawsuit by filing a complaint on December 5, 2012. (Doc. 1) Following initial screening of the complaint pursuant to 28 U.S.C. § 1915, the complaint was dismissed with leave to amend because the complaint was impermissibly vague, and failed for a host of reasons to state claims for relief. (Doc. 8) Thereafter, Gadra-Lord filed an amended complaint on December 13, 2012. (Doc. 9)

Now pending before the Court is the defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

(Doc. 22)  The defendants filed a brief in support of their motion on September 4, 2013 (Doc. 23), to which Gadra-Lord filed a responsive brief on October 16, 2013. (Doc. 25)  The motion is ripe for disposition and, for the reasons that follow, it is recommended that the motion be granted.

## II.  BACKGROUND

The background to this report is taken from the allegations set forth in the amended complaint.  In that document, the plaintiff alleges that on June 18, 2012, he was sent to a psychiatric observation cell at SCI-Coal Township because he was having thoughts of harming himself.  After being released from the observation cell, he was returned to the Restricted Housing Unit where he was being housed at that time.  Gadra-Lord claims he was told he would be placed in a "hard cell", even though he had been cleared by the psychiatric department.  Gadra-Lord then claims that he was deprived of his clothing and property, and prison staff informed him that he would never see his property again, and that it had been taken as retaliation for having reported himself to the psychiatric unit.  Gadra-Lord claims that he attempted to utilize the prison's grievance system to press for return of his property, but this process was ineffective, as he never obtained his property.  Moreover, Gadra-Lord claims that his property was distributed among other prisoners at SCI-Mahanoy, some

of whom allegedly used information from this property in order to make threats against or otherwise harass Gadra-Lord and his family.

Gadra-Lord also claims that he was deprived of showers and meals around this time, and wrongly accused by corrections officers of assault or other misconduct, apparently also in retaliation for having sought psychiatric care. Gadra-Lord claims that his difficulties included being sexually harassed by corrections officers, and subject to racially hostile remarks. He also alleges that among his lost property were unspecified legal documents relating to his criminal appeal, and because these were lost he says he was unable to effectively respond to an unspecified motion, which ultimately resulted in the dismissal of his appeal and the denial of an evidentiary hearing that he claims he should have gotten.

Gadra-Lord brought this action against David A. Varano, the Superintendent of SCI-Coal Township, who has been named because he is the head of the prison, and because Gadra-Lord claims he was "directly involved with the grievance process". (Id. at 4.) Other defendants include RHU corrections officers who were allegedly involved in the deprivation of the plaintiff's property and his subsequent harassment. Additionally, Gadra-Lord has named certain lieutenants who he claims had some involvement in the matters alleged, and prison personnel who he claims failed properly to address his grievances regarding the matters alleged in the complaint.

Gadra-Lord brings this action for alleged civil rights violations pursuant to 42 U.S.C. § 1983. In general and conclusory fashion, Gadra-Lord alleges that the defendants deprived him of psychiatric care; deprived him of his property without due process; allegedly violated his right of "freedom of association"; and violated his right of access to the courts. Gadra-Lord generally avers that he brings these claims for alleged violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957) ). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal

pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir.2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). However, the

court may not rely on other parts of the record in determining a motion to dismiss.

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).

## IV.  DISCUSSION

Liberally construed, Gadra-Lord's amended complaint continues to assert four core claims, alleging that the confiscation of his property:  (1) violated the Fourth Amendment; (2) deprived him of property without due process; (3) unconstitutionally interfered with his right of access to the courts; and (4) constituted some form of unlawful retaliation, apparently predicated on Gadra-Lord's self-reporting to a psychiatric unit.

As pleaded by the plaintiff, however, these claims remain legally unavailing. As we previously explained to Gadra-Lord, to the extent that he is attempting to advance a Fourth Amendment claim in this prison setting, it is clear that this re-pleaded claim fails as a matter of law.  While the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV, in order to give force to this guarantee, government officials are limited to conducting searches that are reasonable.  Delaware v. Prouse, 440 U.S. 648, 653-54 (1979); Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 301 (3d Cir. 2010).  As the Third Circuit has explained:

Reasonableness under the Fourth Amendment is a flexible standard, Bodine v. Warwick, 72 F.3d 393, 398 (3d Cir. 1995), "not capable of precise definition or mechanical application, Bell [v. Wolfish, 441 U.S. 520, 559 (1979)]. "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id.

Florence, 621 F.3d at 301.

In Hudson v. Palmer, 468 U.S. 517, 529 (1984), and Block v. Rutherford, 468 U.S. 576 (1984) the Supreme Court directly addressed this issue in a custodial setting and unequivocally foreclosed plaintiff's Fourth Amendment claims relating to the seizure of items from him. In Block and Hudson the Supreme Court flatly held that the seizure of items from a cell by prison officials does not violate the Fourth Amendment. As the United States Court of Appeals for the Third Circuit has explained:

The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells. Hudson v. Palmer, 468 U.S. 517, 529, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration. Id. at 527. Mindful that internal security is a chief concern in prisons, the Court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells. Id. Therefore, "the Fourth Amendment has no applicability to a prison cell."

Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001).

Thus, it is beyond argument that the plaintiff did not enjoy a privacy right in his prison cell. For these reasons, plaintiff's Fourth Amendment constitutional claims lack any legal merit.

Moreover, inmate due process claims arising out of the confiscation of property are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs. See Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). [Therefore] "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-deprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial component to any inmate due process claim in this setting: (1) the confiscation of property; *and* (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy. It follows, then, that where a prison "provides an adequate post-deprivation remedy, see e.g. Tillman v. Lebanon County Corr. Fac., 121 F.3d 410, 422 (3d Cir.2000), . . . the existence of this post-deprivation remedy forecloses any due process claim, Austin v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa.1995), even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at * 6 (E.D.Pa.1996)." Rambert v.

Beard, 4:CV-09-0634, 2012 WL 760619 (M.D. Pa. Mar. 7, 2012). In this case Gadra-Lord concedes that he had, and exercised, a post-deprivation remedy for the confiscation of this property and legal materials. That he claims that the process available to him did not result in an outcome satisfactory to him does not alter this analysis. The existence and exercise of these post-deprivation remedies fully satisfies the requirements of due process in this setting. Therefore, this claim also fails on its merits.

Gadra-Lord's prospects on this particular claim do not improve if it is cast as an access to courts claim since the plaintiff has not shown that he was denied access to the courts in a fashion which offends the Constitution. This complaint calls upon us to consider the contours of the constitutional right of access to the courts. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing

prisoners with adequate law libraries or adequate assistance from persons trained in

the law.")

Two decades later, in 1996, the Supreme Court provided further definition and

guidance regarding the scope and nature of this right of access to the courts in <u>Lewis</u>

<u>v. Carey</u>, 518 U.S. 343 (1996). In <u>Lewis</u>, the Court eschewed efforts to define this

right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete

outcomes when assessing such claims. As the Court observed:

> Because <u>Bounds</u> did not create an abstract, freestanding right to a law
> library or legal assistance, an inmate cannot establish relevant actual
> injury simply by establishing that his prison's . . . legal assistance
> program is subpar in some theoretical sense. . . . Insofar as the right
> vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is
> the touchstone," <u>id</u>., at 823, 97 S.Ct., at 1495 (internal quotation marks
> omitted), and the inmate therefore must go one step further and
> demonstrate that the alleged shortcomings in the . . . legal assistance
> program hindered his efforts to pursue a legal claim. . . . . Although
> <u>Bounds</u> itself made no mention of an actual-injury requirement, it can
> hardly be thought to have eliminated that constitutional prerequisite.
> And actual injury is apparent on the face of almost all the opinions in
> the35-year line of access-to-courts cases on which <u>Bounds</u> relied . . . .
> Moreover, the assumption of an actual-injury requirement seems to us
> implicit in the opinion's statement that "we encourage local
> experimentation" in various methods of assuring access to the courts.
> <u>Id</u>.,at 832, 97 S.Ct., at 1500.

<u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996).

Thus, following <u>Lewis</u>, courts have consistently recognized two guiding

principles which animate access-to-court claims by prisoners. First, such claims

require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim.  See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998).  A necessary corollary to this principle is that, in order to prevail on an access to the courts claim, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim."  Christopher v. Harbury, 536 U.S. 403, 415 (2002).  Thus:

> Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"-that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. See Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy." See id. at 416-17, 122 S.Ct. 2179.

Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008)

These legal tenets control here, and are fatal to this access to the courts claim as it is currently pleaded for at least two reasons.  First, to make such a claim the plaintiff "must describe the underlying arguable [legal] claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " Monroe v. Beard, 536 F.3d 198, 206 (3d Cir. 2008).  Here, the amended complaint fails to

identify with any specificity lost legal claims or remedies, essential prerequisites to a constitutional tort in this setting. Although Gadra-Lord now claims that he was prejudiced in his state criminal appeal, he does not provide any further information about what claims he was pursuing in that appeal, how he was prevented from protecting his interests in that proceeding, or how the alleged deprivation of unspecified articles of property caused him to suffer the denial of his appeal.[1]

Further, Gadra-Lord simply has not alleged actual concrete prejudice to him in the litigation of his criminal appeal, the essential prerequisite to a constitutional claim in this field. We recognize that Gadra-Lord has attempted to ground this particular claim in the context of his unsuccessful criminal appeal, but the complaint remains far too vague and speculative to satisfy Rule 8 of the Federal Rules of Civil Procedure. Moreover, the claim fails because, at bottom, it expresses nothing more than Gadra-Lord's "mere hope" that the outcome of the criminal appeal might have been different had he not been deprived of unspecified materials. This level of

---

[1] Indeed, the amended complaint seems to suggest only that Gadra-Lord believes he should have been able to have an evidentiary hearing on an unspecified matter during the criminal appeal, and that the lack of his legal property prevented him from being able to advocate effectively for such a hearing. The amended complaint is far too vague to adequately articulate a claim in this regard.

generality will not support an access-to-courts claim. Therefore, this claim fails on its merits.

With respect to Gadra-Lord's retaliation claim, a prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

At the outset, it is not clear exactly what constitutionally protected conduct Gadra-Lord claims to have engaged in that precipitated the allegedly retaliatory conduct. At most in two sentences in the amended complaint, Gadra-Lord seems to be intimating that he was subject to retaliation for seeking psychiatric services at the prison. (Am. Compl. at 1.) As a threshold matter, it is not clear that the act of seeking psychiatric observation as an inmate is activity that is protected under the United States Constitution, and Gadra-Lord does not in any comprehensible way

articulate another constitutionally-protected activity that inspired the subsequent alleged retaliation.

In addition, the third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this third, and crucial, component to a constitutional retaliation claim, causation, an inmate must make an exacting showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished that:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by

engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take. The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events. Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts. Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or

her First Amendment rights is probative, but not dispositive, of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir.2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir.2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950, *3 (M.D.Pa. April 30,2009).

Here, Gadra-Lord's current complaint contains few well-pleaded facts describing this alleged retaliation, and even fewer regarding the predicate constitutionally-protected activity. To be sure, Gadra-Lord claims that he was deprived of his property, and otherwise subjected to inappropriate treatment by prison staff, and he suggests in very general fashion that his treatment was somehow related to his prior act of seeking psychiatric observation at SCI-Coal Township.[2] But the

---

[2] We acknowledge that filing grievances constitutes activity that is protected by the First Amendment. However, although Gadra-Lord complains about the adequacy of the grievance process at SCI-Coal Township, he does not

claims here are pleaded too vaguely, and fail to articulate in a plausible way that Gadra-Lord's act of pursuing psychiatric observation related to his claims of property deprivation and subsequent verbal harassment. We continue to find that the plaintiff has failed to state a claim for retaliation, and submit that this claim should be dismissed.

To the extent that Gadra-Lord is attempting to claim that his rights under the Eighth Amendment were independently violated, the amended complaint is even more deficient. Indeed, the amended complaint begins with a recitation that in 2012, Gadra-Lord sought, and obtained, psychiatric care at SCI-Coal Township after he pursued such assistance in response to suicidal ideation that he was experiencing. The amended complaint does not allege in any discernible way that Gadra-Lord was deprived of medical care, or that the named defendants were deliberately indifferent to his serious medical needs. The absence of such allegations is fatal to any claim that Gadra-Lord is attempting to bring here, because an Eighth Amendment violation in this field requires allegations that prison officials were deliberately indifferent to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifferent requires a sufficiently culpable state of mind, such as "reckless[]

---

appear to be alleging that he was retaliated against for filing grievances. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).

disregard[]" to a substantial risk of serious harm to a prisoner. Farmer v. Brennan, 511 U.S. 825, 836 (1994). Allegations of mere negligent treatment will not trigger constitutional protection. Estelle, 429 U.S. at 105-06.

Here, there are no facts pleaded to show that prison officials at SCI-Coal Township were deliberately indifferent to any serious medical need that Gadra-Lord may have had. To the contrary, the pleading itself alleges that Gadra-Lord received treatment when he sought it, and he does not explain in any way that we can discern how prison officials may have been deliberately indifferent to his medical needs. Accordingly, if he is pursuing a claim for deliberate indifference in this case, the amended complaint remains deficient and is subject to dismissal.[3]

Finally, Gadra-Lord may not premise a constitutional claim on alleged verbal harassment, as he apparently attempts to do in this amended complaint. This newly

---

[3] We observe that the amended complaint includes a single isolated allegation that Gadra-Lord was deprived of needed medical care, but it is pleaded so vaguely, and without connection to any other claim in this case, that we submit it is inadequate to state a claim for relief. In the amended complaint, the plaintiff claims that "[i]t should be noted that the retaliation and refusal of psychiatric care along with other basic necessities lead to me attempting suicide on August 19, 2012." (Am. Compl. at 4.) This single sentence does not articulate how Gadra-Lord was denied psychiatric care or when, or in response to what needs he may have had. In contrast, Gadra-Lord previously alleged that he sought, and received, psychiatric care two months earlier. (Id. at 1.) Without any other factual allegations to explain or contextualize this claim, this single conclusory sentence is insufficient to state a claim for an Eighth Amendment violation.

asserted claim also warrants only brief consideration since: "It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment. See McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' ")." Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006). See, e.g., Rister v. Lamas, 4:CV-10-1574, 2011 WL 2471486 (M.D. Pa. June 21, 2011); Patterson v. Bradford, CIV. 10-5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011); Williams v. Bradford, CIV. 10-5120 JBS, 2011 WL 1871437 (D.N.J. May 13, 2011); Ringgold v. Lamby, 565 F. Supp. 2d 549, 553 (D. Del. 2008); Sharpe v. Costello, 1:06 CV 1493, 2007 WL 1098964 (M.D. Pa. Apr. 11, 2007). Because Gadra-Lord simply alleges that he was verbally harassed and given that it is "well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment," Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006), this verbal harassment allegation also fails to state a constitutional claim.

We are mindful that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in

its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the Court has previously provided Gadra-Lord an opportunity to amend his complaint to articulate viable civil rights claims, but he was unable to do so in the current amended complaint, and it appears that a number of his claims simply fail as a matter of law in a fashion that cannot be cured. Nonetheless, out of an abundance of caution, and in order to extend every reasonable opportunity to Gadra-Lord, we are recommending dismissal of some claims, with prejudice, but are also recommending the dismissal of other claims, without prejudice to a final effort by Gadra-Lord to adequately state a claim.

Specifically, we recommend that all Fourth Amendment, Fifth Amendment dues process, access-to-courts, and Eighth Amendment verbal harassment claims be dismissed with prejudice. As for Gadra-Lord's Eighth Amendment excessive force-deliberate indifference claims and his retaliation claims it is recommended that the amended complaint be dismissed without prejudice to the filing of am amended complaint which meets the pleading standards prescribed by federal law.[4]

---

[4] The defendants also argue that they would enjoy immunity against any claims for intentional infliction of emotional distress under Pennsylvania law that Gadra-Lord may have brought. We do not read any such state-law tort claims in

## V. __RECOMMENDATION__

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss be GRANTED and all Fourth Amendment, Fifth Amendment dues process, access-to-courts, and Eighth Amendment verbal harassment claims be dismissed with prejudice. As for Gadra-Lord's Eighth Amendment excesses force-deliberate indifference claims and his retaliation claims it is recommended that the amended complaint be dismissed without prejudice to the filing of am amended complaint within 20 days of any dismissal order which meets the pleading standards prescribed by federal law.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the

---

the amended complaint, which the plaintiff has instead brought exclusively for asserted violations of the United States Constitution. It appears that any allegations that Gadra-Lord included regarding intentional conduct was intended to support a claim for punitive damages, and not as a predicate for standalone state-law tort claim. Gadra-Lord's brief lends further support to this interpretation. Accordingly, it is submitted that no intentional infliction of emotional distress claim has been brought in this case, this potential claim does not merit any further analysis by the Court, but the plaintiff may endeavor to articulate such a claim in an amended complaint.

proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of November, 2013.


_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge